UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
WALTER AVILA,

                 Plaintiff,

        -against-

THE CITY OF NEW YORK, OFFICER CHRISTOPHER
MITCHELL (N.Y.P.D.) SHIELD #20399, OFFICER
ROBERT REGENT (N.Y.P.D.) SHIELD #10508, CAPTAIN
MARLON LARIN (N.Y.P.D.), LIEUTENANT HUGH
MACKENZIE (N.Y.P.D.), OFFICER STEPHEN ALLOCCA
(N.Y.P.D.) SHIELD #29655, OFFICER MATHEW
MCCARTHY (N.Y.P.D.) SHIELD #02756, OFFICER
BANKS (N.Y.P.D.) SHIELD #24355, SERGEANT
ANDREW UGBOMAH (N.Y.P.D.) SHIELD #05222,
OFFICERS JOHN DOE #1-10 (THE NAME JOHN DOE
BEING FICTITIOUS, AS THE TRUE NAME(S) IS/ARE
PRESENTLY UNKNOWN),

                 Defendants.
-------------------------------------------------------------------X

Index No.: 15-CV-9193 (WHP)

**FIRST AMENDED
COMPLAINT**

**JURY TRIAL
DEMANDED**

The Plaintiff, complaining by his attorney(s), THE LAW OFFICE OF JEFFREY

CHABROWE, P.C., respectfully shows this Court and alleges:

## INTRODUCTION

1.   This is a civil rights action to vindicate the rights of Plaintiff Walter Avila, who on

    January 12, 2013 suffered multiple vicious, brutal, and totally unwarranted assaults by

    members of the New York City Police Department ("N.Y.P.D.").

2. The beatings were in retaliation for Mr. Avila making a cell phone video of officers

    issuing him a parking ticket.

3. After the initial beating, which took place outside the Chase bank located at 103 East

    125th Street, Mr. Avila was falsely arrested and transported to the 25th Precinct in

Manhattan where he was greeted by a swarm of waiting officers, including a captain, who encircled him, and ritualistically took turns shoving and punching him from behind.

4.  Mr. Avila was so badly injured by the end of the subsequent beatings that he had to be taken via ambulance from the precinct to Metropolitan Hospital for treatment.

5.  As Mr. Avila waited for the ambulance, officers repeatedly asked him how it was he was able to afford his car.  Mr. Avila, who identifies as black/Hispanic, had been driving a black 2012 Nissan Maxima SE paid for with profits earned from his common-law wife's (hereinafter "wife" or "wife's") daycare business, where he also worked.  Police later made similar queries of Mr. Avila's wife.

6.  Once at the hospital, an officer, upon information and belief Defendant McCarthy, joked with hospital personnel, clearly seeking to minimize Mr. Avila's wounds, evade culpability, and intimidate Mr. Avila from articulating the full extent of his injuries.

7.  From the precinct, Mr. Avila was taken to Central Booking, where a nurse pronounced him unfit for the general population and ordered officers to take him back to the hospital.

8.  Instead, the officers returned Mr. Avila back to the 25th Precinct to determine how best to cover-up their misdeeds.

9.  After several more hours, officers decided to take Mr. Avila back to Central Booking, but this time fast-tracking him straight to a judge, bypassing the nurse and other Central Booking employees whose intake procedures might have uncovered the officers' misconduct.

10. Upon seeing the judge, Mr. Avila was charged with two counts of Assault in the Third Degree, Resisting Arrest, Attempted Assault in the Third Degree, and Harassment in the Second Degree, then released on his own recognizance.

11. Later that day, still in excruciating pain, Mr. Avila's wife took him to Mt. Sinai Hospital emergency room, where he was admitted and treated for numerous injuries, including a previously undiagnosed fracture of the hand.

12. On November 19, 2013, the criminal case against Mr. Avila was thrown out at the request of the District Attorney's office.

13. Upon information and belief, Defendants Mitchell and Regent have both been named as defendants in previous civil rights suits[1] involving allegations of excessive force.

14. Notably, after reviewing the allegations against Defendant Regent in his prior case, the New York City Law Department declined to represent him, forcing him to obtain his own counsel.

15. The individually named officers in this case, be they known or unknown, are now being sued for their roles in fabricating evidence, falsely arresting, and horrifically beating Plaintiff Walter Avila.

16. The City of New York is being sued for failing to properly train, supervise, and/or discipline New York City police officers, and for continuing to tolerate and defend a widely publicized departmental culture of willful indifference toward the rights of citizens.

## **JURISDICTION**

17. Jurisdiction is founded upon the existence of a Federal Question.

18. This is an action to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to the Plaintiff by the First, Fourth and Fourteenth Amendments to the Constitution of the United States pursuant to

---

[1] See Nicholas v. City of New York, et al., 11-CV-1832, S.D.N.Y., and Worrell et al. v. City of New York, et al., 09-cv-03689, S.D.N.Y., respectively.

3

42 U.S.C. Sections 1983 and 1988, and arising under the law and statutes of the State of New York.

19. Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343(3) and 1343(4), this being an action authorized by law to redress the deprivation under the color of law, statute, ordinance, regulation, custom and usage of rights, privileges and immunities secured to Plaintiffs by the First, Fourth and Fourteenth Amendments to the Constitution of the United States.

## VENUE

20. Venue lies in this District pursuant to 28 U.S.C.A. Section 1391(b) (2) since the events giving rise to the claim occurred in the Southern District.

## PARTIES

21. At all times relevant and hereinafter, Plaintiff WALTER AVILA resided in Manhattan, New York.

22. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK, was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant all Defendant officers were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

23. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK, its agents, servants, and employees, operated, maintained and controlled

the NEW YORK CITY POLICE DEPARTMENT, including all the police officers thereof.

24. Upon information and belief, at all times hereinafter mentioned, Defendant POLICE OFFICERS CHRISTOPHER MITCHELL, ROBERT REGENT, STEPHEN ALLOCCA, MATHEW MCCARTHY, BANKS, Defendant SERGEANT ANDREW UGBOMAH, Defendant CAPTAIN MARLON LARIN, Defendant LIEUTENANT HUGH MACKENZIE, and POLICE OFFICER(S) DOE #1-10 were employed by the Defendant, CITY OF NEW YORK, as members of its police department.

25. Upon information and belief, at all times hereinafter mentioned, all Defendant police officers, be they known or unknown, worked out of the 25th Precinct in Manhattan, in the City of New York.  However, it is possible that some of the officers were signed to other precincts.

26. The NEW YORK CITY POLICE DEPARTMENT is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the POLICE CHIEF THE NEW YORK CITY POLICE DEPARTMENT is responsible for the policies, practices, and customs of the NEW YORK CITY POLICE DEPARTMENT as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees, and is the final decision maker for that agency.

27. This action arises under the United States Constitution, particularly under provisions of the First, Fourth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States

Code, Section 1983, and the rights guaranteed by the Constitution and laws of the State of New York.

28. Individual Defendants in this action are being sued in both their individual and official capacities.

## STATEMENT OF FACTS

29. On January 12, 2013, at approximately 5:30PM, Plaintiff Walter Avila pulled his car up and double-parked in front of the Chase Bank located at 103 East 125th Street, New York, NY 10035.

30. Mr. Avila then exited the vehicle and ran in the bank where he began quickly withdrawing some cash from an ATM located in the bank's vestibule.

31. Shortly thereafter, Defendants Mitchell and Regent approached on foot and began examining Mr. Avila's car.

32. Hoping to avoid a ticket, Mr. Avila popped his head out and indicated that he was in the middle of an ATM transaction, and would be right there to move his car.  The officers nodded, indicating it was okay.

33. Moments later, when Mr. Avila emerged from the bank, he found one of the officers, upon information and belief Defendant Regent, laughing as he completed the task of writing him a ticket.

34. When Mr. Avila inquired as to why he was being issued a ticket after the officers had seemed to indicate they would not, Defendants Mitchell and Regent just laughed.

35. At this point, Mr. Avila took out his cell phone and began to make a video of the scene, hoping to establish that his vehicle was in no way obstructing traffic, and that the

Defendant officers' decision to issue the ticket was made in bad faith and/or for reasons collateral to any legitimate law enforcement purpose.

36. As Mr. Avila continued to film, an increasingly irate Defendant Regent asked Mr. Avila if he intended to post the video on Youtube.

37. In response, Mr. Avila asked the officer for his badge number, and when the officer refused, Mr. Avila trained his camera on it.

38. In response, Regent grabbed Mr. Avila by the shirt, shoved him into the side of his car, and began to reach for his gun.

39. Terrified, Mr. Avila immediately put his hands up—then, out of nowhere, Defendant Mitchell blindsided Mr. Avila, punching him in his right eye.

40. Defendant Regent then began trying to rip Mr. Avila's cell phone out of his hands, as Mitchell continued to punch Mr. Avila about the head and face.

41. Mitchell then took out an asp, and pounded Mr. Avila on the left leg, causing him to collapse to the ground in pain.

42. As Regent continued trying to tear Mr. Avila's cell phone from his hands, Mitchell pounded Mr. Avila's head into the pavement, and kicked him about the body.

43. Soon thereafter, Mr. Avila lost consciousness; the last thing Mr. Avila recalls before blacking out was the sound of his bones cracking as Regent wrenched his cell phone from his hands.

44. At no point did the officers communicate that Mr. Avila was under arrest, or that they were somehow attempting to effect an arrest; nor was there probable cause for them to make an arrest.

45. Mr. Avila never saw the phone again—and though police documents clearly show that the Defendants' interaction with Mr. Avila began with his filming them, the phone was never catalogued as evidence, and when Avila asked the officers for it later, they laughed and denied it had ever existed.

46. When Mr. Avila regained consciousness, he was surrounded by approximately seven officers, including but not limited to,[2] Defendants Regent, Mitchell, MacKenzie, Allocca, McCarthy, Banks, and Ugbomah, one of whom forcibly handcuffed him, sending a jolt of excruciating pain into what he would later learn was a fracture in his hand.

47. When Mr. Avila screamed in pain and asked that the cuffs be loosened, an officer told him to "Shut up!" and he was thrown in the back of a squad car, bloody and literally crying with pain.

48. Defendants McCarthy and Allocca delivered Mr. Avila to the parking lot of the 25th Precinct.

49. Upon Mr. Avila's arrival, he was greeted by a swarm of officers, including all named Defendants, as well as several as yet unknown officers, who quickly, almost ritualistically, formed a half-circle around the side of the vehicle where Mr. Avila was to exit.

50. The group was led by Defendant Captain Marlon Larin.

51. As Mr. Avila was pulled out of the car, still rear-cuffed, he saw Captain Larin ask, "Is this the piece of shit?"  He then heard one of the officers yell, "This is the guy!  This is the guy!"

---

[2] Plaintiff's diligent search for identity of other officers involved, some of whom, a CCRB investigation revealed may have been assigned to different precincts, or perhaps came on duty during a later shift from the other known officers, remains ongoing.  To avoid doubt, the Corporation Counsel should be on notice that the plaintiff intends to name additional defendants as they become known through continuing discovery.

52. Mr. Avila then distinctly saw Captain Larin punch him in the ribs and shout, "Turn around, you piece of shit!"

53. The officers, including Defendant Larin, then proceeded to take turns, spinning and shoving Mr. Avila, as others continued to punch him about the body in a manner apparently intended to disorient him, block him from public view, and prevent him from identifying the officers who were assaulting him.

54. When this beating finally concluded, Mr. Avila was dragged to the entrance of the precinct where, Defendant Regent pushed other officers aside and shouted, "Remember me?" and punched Mr. Avila in the side of the head, nearly rendering him unconscious.

55. Police then forced a still-handcuffed Mr. Avila to sit on his knees on the floor, prompting Larin to repeatedly exclaim, "Move this piece of shit!" apparently advising the officers to resume the beating somewhere else that was out of sight.

56. Thankfully, another officer who had earlier participated in the parking lot beating, offered a tepid defense (upon information and belief, Lieutenant MacKenzie) telling the group, "At some point you have to leave him alone."

57. The officers then put Mr. Avila in a cell, still handcuffed.

58. Approximately 20 minutes later, EMS arrived and took Mr. Avila to Metropolitan Hospital for treatment.  Defendant McCarthy accompanied them.

59. As Mr. Avila waited for the ambulance, officers repeatedly asked him how it was he was able to afford his car.  Mr. Avila, who identifies as black/Hispanic, had been driving a black 2012 Nissan Maxima SE paid for with profits earned from his wife's small business, where he also worked.  Police later made similar queries of Mr. Avila's wife.

60. Once at the hospital, a bald officer (upon information and belief, Defendant McCarthy), from the 25th Precinct laughed and joked with hospital medical personnel, clearly seeking to minimize Mr. Avila's wounds, evade culpability, and intimidate Mr. Avila from articulating the full extent of his injuries.

61. Accordingly, Mr. Avila was simply given a basic "radiologic workup."

62. As Mr. Avila waited, he told the bald officer that the handcuff on his injured hand was too tight, and asked that it be loosened.

63. The bald officer replied sarcastically, "You sure?"

64. Mr. Avila looked away, ignoring the question.

65. The officer then viciously tightened the handcuff, shouting in sum and substance, "You will answer when I speak to you!"

66. Mr. Avila screamed in pain as the bald officer sat and watched.

67. About this time, Defendant Larin arrived at the hospital, and he and the bald officer conferred for a moment; although Mr. Avila could not hear what they were saying, by the end of the exchange, both of their expressions appeared concerned.

68. Following this conversation, the bald officer loosened the offending handcuff, and began washing some of the blood from Mr. Avila's face because, he said, he needed to make Mr. Avila "more presentable."

69. About this time, Mr. Avila's wife arrived at the hospital, and immediately approached the bald officer, demanding answers and promising legal action.

70. In response, the bald officer shot back, "Can you even afford a lawyer?"

71. After Mr. Avila's radiologic workup was complete, he was discharged to police custody, despite needing extensive additional care.

72. Shortly after Mr. Avila was returned to the precinct, he was fingerprinted and Defendant Mitchell began taking pictures of Mr. Avila with his personal camera phone.

73. Mitchell's demeanor now also appeared fearful, as though he knew he may face consequences for the sadistic and prolonged violence inflicted on Mr. Avila.

74. Shortly thereafter, there seemed to be a shift change, and Mitchell told two incoming officers (upon information and belief, Defendant Banks and a still as yet unknown officer, possibly named "Ramos"), "This is the guy."  The two then then transported Mr. Avila to Central Booking.

75. Once there, a male nurse, possibly of Indian descent, took one look at Mr. Avila and stated in sum and substance, "Take him back to the hospital, we can't take him looking like that."

76. In response, the officers put Mr. Avila back in their car and returned him to the 25th Precinct, apparently to regroup and conspire regarding how best to cover-up the assault of Mr. Avila.

77. About this time, Defendant Banks arbitrarily ordered Mr. Avila to surrender his coat.

78. When Mr. Avila explained that he suffers from asthma, and that the cold precinct might aggravate his symptoms, Banks ignored him, took the coat away, and placed it on a nearby chair for Mr. Avila to stare at, apparently to mock and harass him.

79. The coat was not returned to Mr. Avila for approximately two hours, when Mr. Avila was prepared for transport to Central Booking.

80.  Meanwhile, "Ramos" and Banks ordered Mr. Avila to change out of his bloody shirt and put on a clean one from the precinct, threatening that they would prevent Mr. Avila from

going before a judge if he did not comply.  Mr. Avila, who wanted a judge to see the ugly truth of what the Defendant officers had done to him, refused.

81.  At that point, another officer (an as yet unidentified officer, possibly named "Perez") elaborately shackled Mr. Avila in an apparent effort to make him appear as dangerous as possible, and otherwise deserving of the beating he had suffered.

82. Banks and "Ramos" then once again transported Mr. Avila to Central Booking.

83. However, this time the officers bypassed the usual intake process (which included the nurse's screening) and walked Mr. Avila directly to the judge.

84. Mr. Avila was charged with two counts of Assault in the Third Degree, Resisting Arrest, Attempted Assault in the Third Degree, and Harassment in the Second Degree.

85. In Mr. Avila's criminal complaint, Defendant Mitchell falsely claimed that he observed Mr. Avila strike Defendant Regent "about the head" causing "substantial pain."

86. Mitchell also falsely alleged that he observed Mr. Avila "repeatedly swing a closed fist at Officer Regent, and fail to make contact with him."

87. Upon information and belief, Defendant Regent received no medical care for his alleged injuries, no pictures of the alleged wounds were taken, and no video of the incident from Chase security cameras or police dash cams was ever sought or utilized to corroborate the officers' story.  It also remains unclear how Regent so deftly avoided the alleged "repeated" attempts to strike him that consistently failed to connect.

88. The allegations made by the Defendants in Mr. Avila's criminal complaint were plainly false, illogical, and totally unsupported by evidence.

89. After seeing the judge, Mr. Avila was released on his own recognizance, having spent approximately 20 hours in custody.

90. Shortly thereafter, Mr. Avila's wife took him to Mt. Sinai Hospital, where he was admitted and treated for numerous injuries, including a previously undiagnosed fractured hand.

91. Mr. Avila was required to wear a cast on his injured hand for approximately four weeks; he has also required extensive physical therapy.

92. In addition, Mr. Avila suffered headaches so severe that he saw spots, had blurry vision, and had to avoid any exposure to light.

93. Mr. Avila also became terribly anxious about going outside and possibly seeing the police, who continue to terrify him.

94. Mr. Avila has also become prone to nightmares and sleep disturbances, jumping from his sleep and screaming, especially upon hearing sounds like doors closing or sirens.

95. Mr. Avila's emotional and physical injuries also made it impossible for him to continue working part time for the Department of Education as a computer technician, and assisting his wife with her daycare business.

96. In addition, Mr. Avila's wife was forced to close her daycare business due to licensing obstacles created by Mr. Avila's open criminal case.

97. Mr. Avila's injuries were also deeply upsetting to his then seven year old daughter, who was traumatized at seeing her father in such a terrible state, and continues to watch him suffer to this day, adding to Mr. Avila's pain.

98. Perhaps ironically, Mr. Avila never leaves home now without his cell phone in the event that he is once again terrorized by the police in his Harlem neighborhood.  However, unlike the day he was assaulted, Mr. Avila now subscribes to a streaming service where

others can witness what he films live, and a recording is preserved in the event his cell phone is taken or destroyed.

## AS AND FOR THE FIRST CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST ALL DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**

**—Excessive Force—**

99. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 98.

100. Defendants used excessive force against the Plaintiff as herein described, absent any legal justification.

101.  Any force used against the Plaintiff was excessive because he had not committed a crime and there was no probable cause to believe the Plaintiff had committed a crime.

102. Defendants' actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of Mr. Avila.

103. All Defendants are liable for said damage and injuries pursuant to the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

104. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Walter Avila was substantially injured.

## AS AND FOR THE SECOND CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST DEFENDANTS MITCHELL, REGENT, AND DOES

**Violation of Constitutional Rights Under Color of State Law**

**—False Arrest—**

105. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 104.

106. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials, and prohibits law enforcement officers from arresting and detaining individuals in the absence of appropriate authorization.  The Fourth Amendment also precludes police officers from conducting arrests in the absence of probable cause to believe that a crime has been committed.

107.  The actions of Defendants detailed above violated Walter Avila's rights under the United States Constitution.  Given the total absence of any legal justification for Defendant officers' blatant manufacturing of evidence, it was not objectively reasonable for the Defendant officers to arrest Mr. Avila for anything on January 12, 2015.

108.  Defendants' actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of Walter Avila.

109. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

110.  As a direct and proximate result of the unconstitutional acts described above, Plaintiff Walter Avila has been substantially injured.

**AS AND FOR THE THIRD CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS**

**Violation of Constitutional Rights Under Color of State Law**

**-Violation of First Amendment Rights-**

111. Plaintiff Incorporates by reference and realleges each and every allegation stated in paragraphs 1through 110.

112. Defendants, acting in concert, assaulted and arrested the Plaintiff in retaliation for his exercising his First Amendment right to openly record their public activities with his cell phone video camera.

113. Defendants deprived Plaintiff of his well-established rights to freedom of speech under the First Amendment to the United States Constitution, and arrested him without probable cause under the Fourth Amendment to the United States Constitution.

114. Defendants' actions were motivated by bad faith and malice, to retaliate for Mr. Avila's filming as aforedescribed, and/or deliberate indifference to the rights of Mr. Avila.

115. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

116. As a direct and proximate result, the Plaintiff was substantially injured.

**AS AND FOR THE FOURTH CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS**

**Violation of Constitutional Rights Under Color of State Law**

**—Malicious Prosecution—**

117. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 116.

118. The Fourth Amendment of the United States Constitution protects citizens from overzealous and malicious prosecution by government officials without probable cause.

16

119. Walter Avila was prosecuted, without probable cause, relative to his January 12, 2013 arrest as set forth herein.

120. Said charges resulted in a loss of liberty for Mr. Avila, as he was incarcerated for approximately 20 hours as a result of the aforedescribed false and improper charges, and incurred substantial financial and emotional damages as a direct result.

121. Mr. Avila's criminal proceeding was terminated in favor of Mr. Avila, as the charges in question were dismissed outright.

122. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Walter Avila.

123. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

124. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Walter Avila has been substantially injured.

## AS AND FOR THE FIFTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST  ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law

### -Malicious Abuse of Process-

125. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 124.

126. Defendants issued legal process against the Plaintiff.

127. Defendants issued legal process against the Plaintiff to obtain a collateral objective outside the legitimate ends of the legal process—namely to retaliate for Plaintiff's lawfully filming police activities as described herein.

128.  Defendants acted with intent to do harm to the Plaintiff, without excuse or justification.

129. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

130. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Walter Avila has been substantially injured.

## AS AND FOR THE SIXTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**

**-Denial of Constitutional Right to Fair Trial Due to Fabrication of Evidence-**

131.  Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 130.

132.  Defendants created false evidence against Plaintiff Walter Avila, as herein described.

133.  Defendants forwarded false evidence and false information to prosecutors in the New York County District Attorney's office.

134.  Defendants misled the judge and the prosecutors by creating false evidence against Plaintiff Walter Avila.

135. In creating false evidence against Plaintiff Walter Avila, in forwarding false evidence and information to prosecutors, Defendants violated Plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

136. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

137.  As a direct and proximate result of the unconstitutional acts described above, Plaintiff Walter Avila has been substantially injured.

## AS AND FOR THE SEVENTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFFS AGAINST ALL DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**

**-Failure to Intervene-**

138. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 137.

139. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials, and prohibits law enforcement officers from arresting and detaining individuals in the absence of appropriate authorization. The Fourth Amendment also precludes police officers from conducting arrests in the absence of probable cause to believe that a crime has been committed.

140. The actions of Defendants detailed above violated Ms. Avila's rights under the United States Constitution.  It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the clearly established constitutional rights of citizens from infringement by other law enforcement officers in their presence.

141. At all times relevant herein, the right to be free from deprivations of liberty interests caused by unjustifiable criminal charges and procedures, excessive force, as well as the right to be free from restraints on speech and bodily movement, were clearly established constitutional rights that a reasonable person would have known.

142.  Defendants' actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of Mr. Avila.

143. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

144. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Walter Avila has been substantially injured.


### AS AND FOR THE EIGHTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**

**-Conspiracy to Violate Plaintiffs' Civil Rights-**

145.  Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 144.

146.  Defendant officers, as state actors in their individual capacities pursuing personal interests wholly separate and apart from that of the City of New York or New York City Police Department, conspired together, reached a mutual understanding, and overtly acted in concert to undertake a course of conduct violative of the Plaintiff's constitutional rights by:

    a. Agreeing to intentionally fabricate a legal justification for the unauthorized use of force and arrest of the Plaintiff.

    b. Agreeing to ritualistically beat the Plaintiff in the parking lot of the 25th Precinct as aforedescribed.

    c. Agreeing to work in concert to cover up the Defendants' gross misconduct as aforedescribed.

    d. Agreeing to deliberately and maliciously fabricate evidence against the Plaintiff.

    e. Agreeing to falsely arrest and imprison the Plaintiff as aforedescribed.

20

    f.   Agreeing to contrive false charges and otherwise engage in a malicious abuse

        of process and acts of excessive force against the Plaintiff, as aforedescribed.

147.  This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983,

given that said actions were undertaken under color of state law.

148.  Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference

to the rights of Mr. Avila.

149.  As a direct and proximate result of the unconstitutional acts described above, the

Plaintiff has been substantially injured.


**AS AND FOR THE NINTH CAUSE OF ACTION**
**ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS**

**Violation of Constitutional Rights Under Color of State Law**
**-Implementation of Municipal Policies, Practices, and Customs that Directly Violate**
**Constitutional Rights, Failure to Implement Municipal Policies to Avoid Constitutional**
**Deprivations and Failure to Train and Supervise Employees**
**Under Color of State Law-**

150.  Plaintiff incorporates by reference and realleges each and every allegation stated in

Paragraphs 1 through 149.

151.  Upon information and belief, Defendant City of New York, Captain Larin, Lieutenant

MacKenzie, Sergeant Ugbomah and Doe #1-10 who were supervisors and final decision

makers, as a matter of policy, practice, and custom, have acted with a callous, reckless and

deliberate indifference to the Plaintiff's constitutional rights and laws of the United States, in

that they failed to adequately discipline, train, supervise or otherwise direct police officers

concerning the rights of citizens, including not adequately addressing racial bias, citizens'

first amendment right to lawfully record police activities, making false arrests, using

excessive and retaliatory force, not initiating prosecution against innocent individuals, and not forwarding false and/or patently unreliable evidence to prosecutors in order to secure a conviction.

152.  In the alternative, and upon information and belief, Defendants City of New York, Captain Larin, Lieutenant MacKenzie, Sergeant Ugbomah, and Doe #1-10 instituted policies addressing the topics listed above, but through deliberate indifference to the same culture of gross negligence, carelessness, and malice displayed by Defendant officers and/or improperly pressuring officers to meet certain arrest quotas regardless of whether probable cause was present, demonstrated a willful indifference to the constitutional rights of the Plaintiff.

153.  Defendant(s) also, upon information and belief, demonstrated deliberate indifference to the rights of those arrested in the City of New York by failing to adequately hire, screen, train, and supervise the Defendant officers.

154. Upon information and belief, Defendants Mitchell and Regent have both been named as defendants in previous civil rights suits[3] involving allegations related to excessive force. Notably, after investigating the allegations in Worrell, the New York City Law Department declined to represent Defendant Regent, forcing him to obtain private counsel.  Upon information and belief, neither officer was ever disciplined or subject to retraining or enhanced supervision pursuant to their prior civil cases.

155. In August of 2013, federal Judge Shira A. Sheindlin of the Southern District of New York found[4] that the New York City Police Department resorted to a "policy of indirect racial profiling" as officers routinely stopped "blacks and Hispanics who would not have

---

[3] See Nicholas v. City of New York, et al., 11-CV-1832, S.D.N.Y., and Worrell et al. v. City of New York, et al., 09-cv-03689, S.D.N.Y., respectively.
[4] Judge Rejects New York's Stop and Frisk Policy, August 12, 2013, New York Times, available at http://www.nytimes.com/2013/08/13/nyregion/stop-and-frisk-practice-violated-rights-judge-rules.html?pagewanted=all

been stopped if they were white." The Plaintiff in this case identifies as black/Hispanic. Upon information and belief, Defendants Mitchell and Regent are not black, and both Mr. Avila and his wife were asked how Mr. Avila could afford such a nice vehicle, giving rise to an inference that their contact with the Plaintiff was fueled with racial bias.

156. Mayor Bill De Blasio ran his winning campaign[5] in substantial part on the need for "much needed reforms," with the NYPD, calling for "new leadership," the appointment of an "inspector general," to oversee the NYPD, and the introduction of a "strong racial profiling bill."

157. The nature, regularity, and scale of such revelations, and the extraordinary efforts being undertaken in response to a highly publicized slew of wrongful convictions, gives rise to an inference of systemic incompetence and corruption on the part of the New York City Police Department, as such a widespread legacy of injustices cannot plausibly be laid at the feet of a few rogue officers.

158. The policies, procedures, customs and practices of the above-referenced Defendants violated the Constitutional rights of the Plaintiff under the First and Fourth Amendments of the United States Constitution.

159. This conduct on the part of Defendants also represents a violation of 42 U.S.C § 1983, given that said actions were undertaken under color of state law.

160. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been substantially injured.

## DEMAND FOR PUNITIVE DAMAGES

---

[5] See Bill DeBlasio campaign website @ http://www.billdeblasio.com/issues/crime-fighting-public-safety

161. The actions of Defendants described herein were extreme and outrageous, and shock the conscience of a reasonable person.  Consequently, an award of punitive damages is appropriate to punish the named Defendants.  The Plaintiffs do not seek punitive damages against the City of New York.

## DEMAND FOR TRIAL BY JURY

162. The Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Walter Avila requests that this Honorable Court grant the following relief:

A.  A judgment against Defendants Mitchell, Regent, Larin, MacKenzie, Allocca, McCarthy, Banks, Ugbomah, and Doe(s) for compensatory damages, and punitive damages in an amount to be determined by a properly charged jury;

B.  A judgment against the Defendant City of New York for compensatory damages in an amount to be determined by a properly charged jury;

C.  A monetary award for attorneys fees and costs of this action, pursuant to 42 U.S.C. § 1988;

D.  Any other relief this Court finds to be just, proper, and equitable.

Dated:  New York, New York
      March 11, 2016

Respectfully Submitted By:

The Law Office of Jeffrey Chabrowe, P.C.
By:

_____**/s/**_____
Andrew L. Hoffman, Of Counsel
SDNY Bar Code Number: AH2961
261 Madison Avenue, 12 Floor
New York, New York 10016
T:       (212) 736-3935
E: ahoffman@andrewhoffmanlaw.com